UNITED STATES *v.* HUTCHESON *et al.*

*(Circuit Court, S. D. Georgia, E. D.* February 4, 1889.)

1. POST-OFFICE—POSTMASTER—ADJUSTMENT OF ACCOUNT.
   Where the quarterly returns of a postmaster, in which are reported receipts. for sale of stamps, etc., and amount of commission claimed for cancellation of stamps, have been regularly rendered to the department, and have been passed upon by the auditor, and the balances therein found to be due the government have been each quarter carried into a general account, *held,* that. such action by the auditor is a complete allowance of the commissions claimed, and adjustment of such quarterly returns.

2. SAME—WITHHOLDING COMMISSION.
   Where the credits on the general account kept by the auditor against the· postmaster, and made up as above stated, show that the postmaster has fully paid all balances so charged, so that a complete balance could be struck upon. such general account, *held,* that in such case there is a complete settlement of· . the account, and that thereafter the commissions covered by such adjusted accounts were not within the power of allowance by the postmaster general. so as to give him the right to "withhold" the same within the meaning of the· act of congress of June 17, 1878, (20 St. at Large 140.) There was nothing to· "withhold."

3. SAME—BALANCE SHOWN—PRIMA FACIE EVIDENCE.
   If the postmaster general, in the exercise of the power conferred upon him· by the act of June 17, 1878, before the allowance of credit for commissions is made, directs that it shall not be made, and it is not made, but in lieu thereof credit is given on the account kept with the postmaster for the amount of the allowance deemed reasonable by the postmaster general, the balance shown due the government by such an account would be *prima facie* sufficient, but: not conclusive evidence against the postmaster.

4. SAME—CHARGES OF FRAUD.
   Where an account of a postmaster, regular on its face, has been adjusted and' allowed by the proper accounting officers, and fully paid. such officers cannot,. after the term of office of the postmaster has expired, evolve *ex parte* a balance in favor of the government, founded solely upon a general and vague al-

legation of fraud in accounts formerly passed upon, so as to make such balance *prima facie* evidence against the postmaster and his sureties. Such allegations must be specific, and sustained by competent evidence.

*(Syllabus by the Court.)*

At Law.

*Du Pont Guerry*, U. S. Atty.

*Lester & Ravanel*, for defendants.

SPEER, J. The district attorney has brought suit in behalf of the government against the defendants on a postmaster's bond. The government has offered in evidence a certified copy of the bond, a certified copy of a demand for $1,296.26, and what purports to be a transcript of the account kept by the post-office department with the defendant, Mary P. Hutcheson, as postmaster at Marysville, Ga.; and appended thereto are copies of the quarterly returns or accounts current of the said postmaster, rendered to the post-office department during her incumbency of the office. This account and the returns are under one certificate from the department, the language of which is that the writing annexed to the certificate is "a true and correct statement of the account from October 1, 1878, to June 30, 1885, of Mrs. Mary P. Hutcheson, late postmaster at Marysville, in the state of Georgia, and that the papers thereto appended are copies of papers pertaining to his accounts in the office of the sixth auditor." The government has also offered in evidence a certified copy of an order made by the postmaster general, which is in the following words:

"POST-OFFICE DEPARTMENT. OFFICE OF THE POSTMASTER GENERAL.

"Order No. 230. WASHINGTON, D. C., Oct. 30, 1886.

"Being satisfied that Mary P. Hutcheson late P. M., Marysville, Johnson Co., Ga., has made a false return of business at the post-office at said place during the period from Oct. 1, 1878, to June 30, 1885, in order to increase her compensation beyond the amount she would justly have been entitled to have by law, now, in the exercise of the discretion conferred by the act of congress entitled 'An act making appropriations for the service of the post-office department for the fiscal year ending June 30, 1879, and for other purposes,' approved June 17, 1878, (section 1, c. 259, Supp. Rev. St.,) I hereby withhold commissions on the returns aforesaid, and allow as compensation (in place of such commissions, and in addition to box-rents) deemed by me under the circumstances to be reasonable during the period aforesaid the rate of $10 per quarter, and the auditor is requested to adjust her accounts accordingly.

"WM. F. VILAS, Postmaster General."

An inspection of the certified copies of the accounts current or quarterly returns of the postmaster shows that they are made upon the forms prescribed by the department, and that there are parallel columns provided for the figures, stating the amount of the different items of the account as rendered by the postmaster, and as found by the auditor upon adjustment. It further appears from the figures entered in red ink, in the column provided for the entries by the auditor, that the finding of the au-

ditor as to the items of the accounts agreed with the statement of the accounts as rendered by the postmaster. It further appears from inspection that the general account kept by the department with the postmaster was made up in the following manner: On the debit side the postmaster·is charged quarterly with the balances found due by the auditor on adjustment of the quarterly returns of the postmaster, the aggregate of which up to and including the quarter ending June 30, 1885, is $771.83. On the credit side the postmaster is given credit for his payments or deposits made to the credit of the government, the aggregate of which amounts to $771.96. On the debit side of the account, however, there are additional entries which appear under date of December, 1886, long after she had ceased to be postmaster, and long after the last entry on the credit side, showing an amount more than sufficient to off-set the debit items. These are stated to be for "amount of commissions illegally retained" during the quarters stated from 1878, to June 30, 1885. These items aggregate $1,296.39. A general balance is struck upon the account below these items, leaving the defendant in debt to the government, according to the account, in the sum of $1,296.26; and for this amount the government now brings suit.

It is contended by the district attorney that the provision in the act of June 17, 1878, (20 St. at Large, 140,) "that in any case where the postmaster general shall be satisfied that a postmaster has made a false return of business, it shall be in his discretion to withhold commissions on such returns, and to allow any compensation that, under the circumstances, he may deem reasonable," gave to that officer the power to make the order which he did make on October 30, 1886, and under it to reopen the entire account from 1878, and charge back upon the postmaster the excess of the commissions which had been retained in excess of the $10 per quarter deemed reasonable by the postmaster general, and that the balance shown on the account after such recharges were made is to be taken as *prima facie* correct in this proceeding. The court does not so construe the law, nor does it think the statute referred to applicable to the facts of this case. The action of the auditor in passing upon each quarterly return which covered the charges for commissions, and in carrying the balance therein found to be due the government into the general account of the postmaster, was a complete adjustment of such quarterly returns; and, since the government account shows that such adjusted balances were fully paid, and that there was no balance due in February, 1886, we do not think there was anything for the postmaster general to "withhold." The postmaster had already been given credit for the commissions claimed, and had been paid in full. We think the meaning and scope of the statute is simply this: If the postmaster general shall be satisfied that a postmaster has made a false return of business, it shall be in his discretion to withhold from the postmaster credit for the amount of commissions claimed in such returns, but to allow any compensation that under the circumstances he may deem reasonable. If the postmaster general had made the order fixing the compensation deemed reasonable by him before giving the

postmaster credit for the commissions, and had given the postmaster credit on his account for the $10 per quarter instead, and had withheld the credit of commissions claimed in excess of that amount, the government's account would have shown the balance now sued for, and would have been *prima facie* sufficient; but that is not the case at bar. But even such an account would not be conclusive upon a postmaster. He has the legal right to the commission fixed by the statute for the service, if actually performed, and may plead that right when sued upon his bond, or may assert it in an independent suit against the government, brought in the court of claims, or in a circuit or district court since the act of March 3, 1887, (24 St. at Large, 505.) It is not questioned that, even after adjustment and allowance of an account, the department ought to withhold payment of a balance found due a postmaster or other officer if it be discovered that the account is fraudulent; or even where the account has been fully adjusted and paid, there can be no doubt of the right of the government to recover the money so fraudulently obtained, upon proper proof of fraud. But where an account regular on its face has been adjusted by the proper accounting officers, and fully paid, such officers cannot, after the term of office of the postmaster has expired, evolve *ex parte* a balance in favor of the government, founded solely upon a general and vague allegation of fraud in accounts formerly passed upon, so as to make such balance *prima facie* evidence against the postmaster and his sureties. Such a restatement of the account is proper enough as a guide to the district attorney in making out his case, but the postmaster and his bondsmen have the constitutional right to a trial by jury, and to have the allegations of fraud plainly specified. Moreover, these specifications, if not self-evident, must be proven by competent evidence, before a judgment can be rendered against the citizen which would deprive him of his property.

To condense in a few words the conclusions of the court: The postmaster is presumed to have done his duty until the contrary is made to appear by the proof. The accounts of the postmaster, in the absence of the incriminatory letter of the postmaster general, are fairly and honestly kept, and balance to a cent. That letter charges simply that the postmaster "made a false return of business during the period from Oct. 1, 1878, to June 30, 1885," without other notice to the postmaster, or other specification of fraud. In consequence, the postmaster general arbitrarily assesses and adjudges a balance against the postmaster of $1,296.26. The district attorney offers no proof to show that the postmaster general was right in his conclusions, and admits that there is nothing he can submit, either upon the face of the accounts or proof *aliunde*, to show the falsity and the fraud charged. He closes his case. To allow a verdict upon such a presentation, in the opinion of the court, would be to substitute assertion for proof in a judicial proceeding; to hold the plaintiff entitled to recover because the suit is brought; to adjudge the defendant guilty of fraud because she is accused; and, in other words, to presume fraud in violation of the settled rule that it is never presumed; and to avoid all the effect of that sovereign and beneficent

principle of the constitution conferring upon the defendants in such cases the right to trial by jury. The jury is directed to return a verdict for the defendants.